Wesley R. Asinof, Atlanta, Georgia, E. C. Brannon, Gainesville, Georgia, for appellant.

Lamar N. Smith, Asst. U. S. Atty., Atlanta, Georgia, J. Ellis Mundy, U. S. Atty., Atlanta, Georgia, for appellee.

Before HUTCHESON, HOLMES and SIBLEY, Circuit Judges.

No. 12639.

United States Court of Appeals
Fifth Circuit.

Oct. 28, 1949.

37 C.C.P.A.(Patents)
Application of DANIELS.

Patent Appeal No. 5617.

United States Court of Customs
and Patent Appeals.

Argued May 9, 1949.

Decided Sept. 30, 1949.

Charles C. Scheffler, New York City, Joseph N. Nielsen and Donald C. Harrison, New York City, for appellant.

W. W. Cochran, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

The seven claims of appellant's application for a patent for alleged improvements in resins (such as some that are used in varnishes) made from resorcinol and the two claims for the process of manufacture were rejected by the Primary Examiner whose decision was affirmed by the Board of Appeals of the United States Patent Office. No claims were allowed and by appeal the decision of the board is brought before us for review.

The composition claims are numbered 10 to 16, inclusive; the process claims 17 and 19 respectively.

As illustrative of the respective groups we follow the example set by the board and quote Nos. 10 and 17:

"10. Composition comprising a product of reaction of resorcinol with from about sixteen to twenty-four per cent by weight based on the resorcinol of an agent selected from the group consisting of formaldehyde and its polymers in a substantially neutral, monohydric-phenol, novolak resin, the monohydric-phenol resin forming from about ten to ninety per cent by weight of the mass of the aforesaid components, said composition being a fusible type of resinous product having keeping qualities without appreciable gelling at normal room temperature.

"17. Process of preparing a composition of a fusible, nonreactive type having resorcinol as a reactant which comprises adding to a fused, substantially neutral, monohydric-phenol, novolak resin resorcinol and from about sixteen to twenty-four per cent by weight based on the resorcinol of paraformaldehyde, the monohydric-phenol resin forming from about ten to ninety per cent of the mass of the aforesaid components, and reacting the mass to a stage of brittleness at room temperature."

The following patents were cited as references: Aylsworth, 1,020,593, Mar. 19, 1912; Novotny, 1,802,390, Apr. 28, 1931; General Electric (British), 350,934, June 11, 1931; Novotny, 1,849,109, Mar. 15, 1932.

The brief on behalf of appellant, which states that resorcinol and resorcin "are different names for the same compound," recites the limitations which distinguish the claims from each other as follows: "* * * Claim 10 is broadly to formaldehyde and its polymers as a reactant, while claim 11 differs in being limited to paraformaldehyde. Claim 12 adds to claim 10 the incorporation of hexamethylenetetramine as a hardening agent. Claim 13 defines the hexamethylenetetramine proportion under the determining conditions of

about 50 per cent of novolak resin being present. Claim 14 is to a brittle solid composition and defines the novolak as one that has been acid-catalyzed and neutralized and to the preferred range of fifty to eighty per cent of novolak resin. Claim 15 repeats claim 14 with added limitation of hexamethylenetetramine proportion like claim 13. Claim 16 repeats claim 14 and adds hexamethylenetetramine in amount to render heat-hardening without gelling. Claim 17 covers the process steps of mixing in a *fused* novolak resorcinol and sixteen to twenty-four per cent of paraformaldehyde, the novolak constituting from ten to ninety per cent of the mass, and reacting to a stage of brittleness. Claim 19 adds to claim 17, the step of grinding an amount of hardening agent into the composition." (Italics quoted.)

The Primary Examiner's description of the alleged invention, which the board adopted and quoted, is as follows: "The invention relates to resorcinol-formaldehyde resins and their production. When resorcinol is reacted with formaldehyde in proportions to yield a heat-reactive resin that sets to an infusible, insoluble state, the product is unstable in that the curing reaction tends to continue at room temperature. When insufficient formaldehyde for production of the heat-reactive resin is employed, so that the product is stable and non-reactive until additional formaldehyde or its equivalent is added, the resin is sticky and non-grindable at normal temperature. Applicant reacts resorcinol and formaldehyde in the presence of a neutral novolak monohydric phenol-formaldehyde resin in proportions to form a novolak, that is, a permanently fusible non-heat-hardening product and the composition is convertible to heat-reactivity by addition of a hardening agent, such as, hexamethylenetetramine. This procedure is stated to yield compositions which in the intermediate state before addition of the hardening agent are brittle solids grindable at room temperature and with the hardening agent are stable at normal temperature."

Appellant's brief defines "resorcinol" as "a dihydric phenol with one hydroxyl on the benzene ring in position meta to the other," and states that it "is characterized by extreme reactivity with formaldehyde in forming a resin." Also, after stating: "In general, reactive resins, i. e. resins which on heating become infusible and insoluble, are made useful by stopping the resin-forming reaction in an intermediate stage where the resins are still fusible and soluble," asserts:

"It is the accomplishment of these ends— a brittle, grindable, fusible and soluble resin intermediate having the fast reactivity of a resorcinol resin upon the addition of a hardening agent—that the present invention provides. It is based on the discovery that a monohydric phenol-formaldehyde resin of the novolak (so-called permanently fusible) type is effective as a medium, in which the resorcinol-formaldehyde takes place, to control the reaction in order to achieve the stable intermediate. What is more, the agent itself becomes reactive upon the addition of hardening agent, and surprisingly, in spite of the great difference in reactivity, yields in conjunction with the resorcinol resin a homogeneous product that cures or sets upon the addition of hardening agent at the high speed reactivity of the resorcinol resin component.

"This accomplishment of a stable, brittle, fusible and soluble resorcinol intermediate depends on the conditions:

"1—limitation on the proportion of formaldehyde-to-resorcinol of about sixteen to twenty-four per cent of formaldehyde on the weight of the resorcinol;

"2—presence of the novolak resin during the reaction of the resorcinol and formaldehyde in the proportion of ten to ninety per cent of the reaction mass; and

"3—a *neutral* novolak, i. e., one free from acid, since acids are very effective catalysts for advancing the resorcinol-formaldehyde product to the infusible state." (Italics quoted.)

The Primary Examiner rejected all the claims on (1) Novotny patent 1,802,390, "alone" and on (2) that patent "taken with the remaining references."

The Novotny patent relates to the manufacture of synthetic resins and plastics

286

"where resorcin is utilized as a part of the required phenolic body in the reaction with preferably an aldehyde body." It is taught that various phenolic bodies may be used "such as phenol, in its chemically pure or unrefined grades, * * * or for that matter its various homologues, or substitution products such as the cresols, naphthols, xylenols or mixtures of these * * *."

■ The board confined itself to a discussion of that patent and made no specific reference to any one of the other three. However, it did not disapprove the second ground (in fact, some expressions indicate that those references may have been considered as pertinent prior art) and so that remains a ground of rejection. In re Boyce, 144 F.2d 896, 32 C.C.P.A., Patents, 718, 1944, C.D. 609, 568 O.G. 568, and cases therein cited.

Claims 13 and 15 were further rejected, as expressed by the board, "as being parenthetical, too broad, indefinite, and not pointing out the invention"; and claim 19 "as functional and too broad in regard to the hardening agent."

The subject matter of Novotny patent 1,802,390 is illustrated by a number of examples, it being recited: " * * * it is to be understood that changes can be made in the combination of ingredients used, their proportions and treatment within a wide range without departing from the spirit of the invention."

Of the examples, No. 7, which is quite broad, was regarded as basic by the tribunals of the Patent Office. We here reproduce it: "A molding powder consisting of various fillers such as, for example, wood flour, asbestos or other organic or inorganic fillers, may be mixed or impregnated with a suitable synthetic resinous product which may be of either the permanently fusible or the potentially reactive type. To this product preferably a mixture of resorcin and paraformaldehyde in about the same proportions mentioned in the preceding examples to the weight of the resin in the molding powder is added, either before the molding powder is made but preferably after it had [has] been ground and comminuted, when this hardening agent is mixed therewith. In this manner the mixture of resorcin and paraformaldehyde will give a molding powder having excellent qualities for preforming in that the slight heating during the action of preforming will cause the paraformaldehyde resorcin mixture to form an intermediate condensation product having high cementitious qualities. Upon subsequent pressing and heating in a mold, the product goes to infusibility rapidly."

The proportions of the ingredients recited in examples 5 and 6 were found to be, as stated by the Primary Examiner, "within the ranges called for by the claims," and the correctness of this particular finding is not challenged in the reasons of appeal.

It is obvious that, if we find the claims to have been properly rejected on Novotny patent 1,802,390 standing alone, it does not detract from the force of the denial to reject them also upon it in view of, or taken with, the other three references. On the other hand, if it should be held that the claims were improperly rejected on Novotny patent 1,802,390 standing alone, it would then be necessary to consider the other references in connection with it. We think appellant's reasons of appeal may properly be held sufficient to cover both rejections and, in our opinion, it will simplify the decision to consider the second ground along with the first.

We first quote from the decision of the board the following:

" * * * The Examiner relies primarily on Example 7 of the basic reference. This example discloses the addition of resorcinol and paraformaldehyde to a monohydric phenol novolak resin. The proportions are fixed as by reference to Examples 5 and 6. The novolak resin is mixed with or impregnated in a suitable filler for forming a molding powder and the mixture of resorcinol and paraformaldehyde is added either before or after the molding powder is made. The material is then subjected to a preforming operation during which there is slight heating which the patentee says causes condensation to an intermediate product having high cementitious qualities.

"The Examiner holds the basic reference teaches the use of a neutral novolak, and that the reference employs the same ingredients in proportions within the ranges called for by most of the claims, and as to the other claims, such as claim 14, the difference is not critical or patentable over the reference. He further holds the addition of a hardening agent broadly or hexamethylenetetramine specifically (claims 12, 13, 15 and 16) to the reference process or product lacks invention as being conventional and shown in the secondary art."

This is followed in the board's decision by a recital of its reasons for approving the Primary Examiner's rejection on Novotny 1,802,390 alone.

The following relating specifically to the other references is taken from the official statement of the examiner following the appeal to the board: " * * * The addition of a hardening agent broadly, (claim 19) or specifically hexamethylenetetramine (claims 12, 13, 15, and 16) to a monohydric phenol-formaldehyde novolak or to a resorcinol-formaldehyde novolak, that is, non-heat-reactive or permanently fusible resins, to render them potentially reactive is highly conventional, acknowldeged by applicant as not being the inventive feature and shown by each of the British patent, Aylsworth and Novotny (1,849,109). The two-step addition of formaldehyde or its equivalent, such as, hexamethylenetetramine is very old commercial practice and shown in the secondary references applied both to monohydric phenol and resorcinol resins. No invention is therefore involve[d] in applying it to the Novotny (1,802,390) product or process. The entire disclosure in Novotny (1,849,109) is directed to control of the reaction of resorcinol with formaldehyde by use of formaldehyde initially to form a novolak resin and then adding sufficient formaldehyde or hexamethylenetetramine to impart thermosetting properties. The patent points out that the thermosetting composition produced by the two-step addition of formaldehyde or its equivalent is stable at room temperature (page 1, lines 15–22; page 3, line 126 to page 4, line 9). It is considered that applicant has done no more than apply the teachings of Novotny (1,849,109). Aylsworth or the British patent to the Novotny (1,802,390) product and process."

A further assertion in the statement is: " * * * Control of the reaction by adding the formaldehyde or equivalent in two parts utilized by applicant is taught and disclosed by Novotny (1,849,109) Aylsworth and the British patent."

Appellant filed with the board a petition for rehearing accompanying it with argument. The board (stating that it was not its practice to grant rehearing) treated the paper as a request for reconsideration. By it appellant challenged certain of the board's original findings, and we are asked to consider the arguments there along with the brief for appellant filed before us, and inasmuch as that challenge comprehends substantially all the material questions raised before us appellant's request in that respect has been granted. The board's summarization of and reply to appellant's contentions are here reproduced. The summarization reads: "Appellant states the Novotny novolak* as employed in Example

---

* In the argument upon the request for reconsideration by the board quotation was made from "Walker on 'Formaldehyde'" (1944) page 186 as follows.

"Linear Resins: Novolaks. These resins are generally regarded as condensation polymers of simple monomethylolphenols. They are readily obtained from phenol, cresols, and many other phenols which possess two or more active nuclear positions unblocked by substituent groups. Baekeland gave the name of Novolaks to resins of this type. They are fusible, brittle solids which dissolve readily in some organic solvents and are unchanged by prolonged heating in the absence of air. When air is present, the hot resin is oxidized at the surface, forming a brown film which does not melt and is not affected by organic solvents.

"Baekeland found that Novolaks were obtained when phenol and formaldehyde were condensed with an acid catalyst when the molar ratio of formaldehyde to phenol was less than one. Under alkaline conditions, however, insoluble resins may be produced even when an excess

7 is not neutral. It is also stated the product here claimed is essentially the reaction in a neutral novolak, and that the specification repeatedly points out the gel state is to be avoided in an intermediate product because the latter is then useless. It is also stated that an acid in catalytic amounts (used in making novolak resins) causes the resorcinol reaction to said useless gels and that Novotny does not show a resorcinol-resin product in a stable intermediate stage that is fusible without going to a gel stage."

We understand from the specification of appellant's application that a novolak resin is a non-heat-hardening resin, or, as the brief of the Solicitor for the Patent Office expresses it, "a permanently fusible resin." We further understand that by "neutral" is meant a material free from bases or acids.

The board's response to appellant's request and argument reads: "We are still of the opinion that Novotny teaches the use of a neutral novolak. If, as appellant states, acid in catalytic amounts produces a useless gel, then it would seem that the Novotny intermediate product would be useless if the novolak used is acidic. Novotny is presumed to operate as therein stated and there is nothing in the record to substantiate a claim that the product produced is not useful. The product being useful, it must be that the novolak used is neutral. Further, it is believed apparent that the Novotny preformed product is a stable intermediate in the sense, at least, that it has "keeping qualities without appreciable gelling at normal room temperature," which is all that any of the claims require in this regard. As to the product being "fusible," the reference product is composed of the ingredients and proportions covered by the claims, and it is therefore the same as the product defined in the claims."

The errors alleged in the reasons of appeal cover substantially the same grounds as those covered in the request for reconsideration and they are discussed item by

item in both the brief for appellant and that of the Solicitor for the Patent Office.

The brief for appellant compares the disclosure of Novotny patent 1,802,390, particularly example 7 thereof, with the subject matter of his application and alleges certain differences between them.

It is said the object of the patent is a highly reactive powder of wood flour and any type of phenolic resin by the mechanical admixture therewith of resorcinol and paraformaldehyde which constitutes a hardening agent, while appellant's object is a fusible, i. e., nonreactive resin of resorcinol reacted with formaldehyde that requires added hardening to become reactive. It is asserted that the reactivity or instability of the product defined in the patent example is shown by condensation caused during the preforming pressure alone and by rapidly going to infusibility on heating and pressing in a mold with no added catalyst.

It is noted that the example of the patent, supra, teaches that in making a molding powder of which a filler and a phenolic resin are ingredients, the latter ingredient may be of either the permanently fusible type or the potentially reactive type. As has been said hereinbefore, we understand permanently fusible resin is novolak or non-heat-hardening resin. To the product resulting from the mixture, or impregnation, of the filler with the resin there is added a mixture of resorcin (which, according to Webster's New International Dictionary, is a compound derived from resins and related to orcin) and paraformaldehyde in proportions which are within the range of the proportions taught by appellant, and they may be added to the mixture of filler and phenolic resin, for the purpose of hardening it, "before the molding powder is made but preferably after it had [has] been ground and comminuted."

It is said in the example: " * * * In this manner the mixture of resorcin and paraformaldehyde will give a molding pow-

of phenol is employed. This can be explained by the fact that since alkaline catalysis favors polymethylolation, subsequent condensation yields cross-linked resins which are infusible, whereas acid catalysts, as previously pointed out, favor

condensation of the monomethylolated phenol as fast as formed. Heating saligenin in the absence of a catalyst produces saleritin, a soluble resin whose properties are those of a Novolak."

der having excellent qualities for preforming in that the slight heating during the action of preforming will cause the para-formaldehyde resorcin mixture to form an intermediate condensation product having high cementitious qualities. Upon subsequent pressing and heating in a mold, the product goes to infusibility rapidly."

Appellant teaches the creation of a fusible type of resinous product which as defined, particularly in claim 10, supra, is produced by reacting resorcinol with from sixteen to twenty-four per cent formaldehyde in a substantially neutral monohydric-phenol novolak resin. The product is stated to have "keeping qualities without appreciable gelling at normal room temperature."

It seems apparent to us that every material physical element, or limitation, of claim 10 is met by specific nomenclature in the quoted example from Novotny patent 1,802,390, except that there is no use in the example of the phrase "substantially neutral" which is applied in all the claims to the resin used as medium for appellant's initial product.

As to this limitation the Primary Examiner directed attention to the fact that the Novotny patent "discloses that the resinous material to which filler is added should be neutral" and that "in example 7 filler is employed."

We here quote the language of the specification to which the Primary Examiner obviously alluded: " * * * Of course, to obtain the very highest results the choice of fillers to be mixed with this binder is likewise important and care should be taken that these are as free as possible from bases or acids or products of this nature usually used as condensing agents. The filling material is less likely to be affected when the resinous material is free from bases, acids or their salts as there will be less ionization and hydrolysis in the molding plastic when under severe electrical stresses."

The Solicitor for the Patent Office plausibly argues that in carrying out the suggestion of the patentee relative to resinous material being free from bases, acids, or their salts—that is, being substantially neutral—

"one skilled in the art would of necessity utilize a substantially neutral permanently fusible resin in example 7, since neutrality is freedom from bases or acids."

We are not convinced that appellant is entitled to prevail upon the basis of his use of the phrase "substantially neutral," and we agree that the prior art fairly discloses substantially neutral, novolak resin and its use in conformity with the process claims. We may add that even if the process claims are not rejectable on the prior art they are clearly rejectable for the other reasons stated by the tribunals of the Patent Office.

It seems to us that the foregoing disposes of the only issues in the case which require detailed discussion by us. The applicability of the three secondary references to certain of the limitations of the appealed claims is obvious from the excerpt hereinbefore quoted from the Primary Examiner's official statement following the appeal to the board and need not be elaborated.

We are not convinced of error in the board's decision, and it is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.